UNITED STATES of America ex rel.
Nester ROLDAN, Petitioner-
Appellant, '

v.

Harold W. FOLLETTE, Warden of Green-
haven Prison, Stormville, New York,
Respondent-Appellee.

No. 1, Docket 35061.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1971.

Decided Oct. 28, 1971.

Phylis Skloot Bamberger, New York
City (Robert Kasanof, The Legal Aid
Society, New York City, on the brief),
for petitioner-appellant.

Amy Juviler, Asst. Atty. Gen. (Louis
J. Lefkowitz, Atty. Gen. of New York,
Samuel A. Hirshowitz, First Asst. Atty.
Gen., on the brief), for respondent-ap-
pellee.

Before KAUFMAN, ANDERSON and
FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Nester Roldan, three times
convicted of second degree murder,
argues that the failure to advise him of
his right to appeal in *forma pauperis*
from his plea of guilty to the last of
these killings entitles him to federal ha-
beas corpus relief. Appellant asks us to
extend to appeals from guilty pleas the
rationale of our decision in United
States ex rel. Smith v. McMann, 417 F.
2d 648 (1969) (*en banc*), cert. denied,
397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d
105 (1970), that after a criminal trial
indigents are constitutionally entitled to
be told of their right to appeal. We de-
cline to consider whether such an exten-
sion of our rule is warranted or, if it is,
whether it should be applied to a plea
taken in 1952, because Roldan has failed
to demonstrate a basis for ordering an
evidentiary hearing on his alleged depri-
vation of federal constitutional rights.
28 U.S.C. §§ 2242, 2243. Therefore, we
affirm the order of the United States
District Court for the Southern District
of New York, Sylvester J. Ryan, J., de-
nying the petition without a hearing.

The facts of the case are lamentable
but simple. In October 1952, petitioner
was tried on an indictment charging him
with the first degree murder of his
wife. After three days of trial in the
former Court of General Sessions, New

York County, when all the evidence was in and both sides had summed up, petitioner sought to withdraw his plea of not guilty and plead guilty to murder in the second degree. That such a plea would eliminate the possibility of a sentence of death was undoubtedly in the minds of petitioner and his four assigned lawyers. The presiding judge, Louis J. Capozzoli, allowed the guilty plea and sentenced Roldan a few months later to a term having a minimum of 30 years and a maximum of life in state prison.

For 15 years petitioner made no objection to the judgment. In January 1968, he petitioned for a writ of error *coram nobis* in the Supreme Court, New York County, on five grounds. The first four may be stated briefly. Petitioner claimed that one of his lawyers had told him that the District Attorney had promised him a minimum sentence of only 20 years, that he had been denied allocution, that the state judge had not made a sufficient inquiry when he pleaded guilty, and that the plea was induced by an illegally obtained confession. The last ground upon which relief was sought was that petitioner had been deprived of his right to appeal as an indigent. This claim was apparently based on alleged statements by one or more of petitioner's lawyers to the effect that an appeal would cost at least $2,500.

The state court ruled against petitioner on all points and in particular concluded, without "the slightest doubt," that the *claim of a promised sentence* was untrue. Most important for purposes of this appeal, the state court found that the "unsupported statement 15 years after the event" as to the alleged deprivation of the right to appeal as an indigent was "made of whole cloth and not worthy of belief." While the state court held no hearing, the opinion pointed to a number of persuasive rea-

sons based on record facts as to why petitioner was not believable. The court also explicitly approved of the reasonableness of the sentence. Roldan appealed to the Appellate Division, abandoning, however, the first two contentions set forth above. The order was unanimously affirmed. People v. Roldan, 33 A.D.2d 659 (1st Dep't 1969). Leave to appeal to the Court of Appeals was apparently denied in November 1969.

In February 1970, Roldan sought a writ of habeas corpus in the United States District Court for the Southern District of New York. This time he alleged that his guilty plea was "coerced" by use of an illegally obtained confession, that the plea was induced by fear of the death penalty, and that he was deprived of his right to appeal from the judgment of conviction based on the guilty plea because his assigned counsel told him an appeal "would cost $2500 and be fruitless anyway," and because he "was never informed that he had a right to appeal at the expense of the state." Without an evidentiary hearing, Judge Ryan denied the first two claims on the strength of the decisions of the Supreme Court in McMann v. Richardson, 397 U. S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The judge rejected the last claim on the grounds that Roldan, no stranger to the law of second degree murder, apparently knew of his right to appeal and the governing precedents on the question in this circuit did not—and should not—extend to appeals from guilty pleas.

On appeal to us only the issue of the reach of United States ex rel. Smith v. McMann, *supra*, remains. In that case, the same counsel who now appears for Roldan persuaded a majority of this court sitting *en banc* to reverse an earlier decision [1] and hold that Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9

---

1. United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1313,

18 L.Ed.2d 351, rehearing denied, 387 U.S. 915, 87 S.Ct. 1693, 18 L.Ed.2d 641 (1967).

L.Ed.2d 811 (1963), requires the state "to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent." 417 F.2d at 654. We reiterated this holding six months later in United States ex rel. Witt v. LaVallee, 424 F.2d 421 (2d Cir. 1970) (*en banc*), which was submitted to the *en banc* court on the same day as *Smith* but determined only after certiorari was denied in *Smith,* see 424 F.2d at 421 n.* But both *Smith* and *Witt* were criminal convictions *after a trial,* and it is a large step to apply the rationale of these decisions to convictions based upon the admission in open court by a defendant represented by counsel that he did commit the crime charged. How sizeable the step would be is indicated by the recent proposal of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States that there "be no duty on the court to advise the defendant of any right to appeal after sentence is imposed following a plea of guilty."[2] Under the circumstances of this case, extending the rule of *Smith* seems highly inappropriate. The only issue defendant tells us he wants to raise on appeal in the state courts is an alleged excessiveness in the minimum sentence of 30 years,[3] a dubious claim at best for a defendant with his record.[4] Moreover, no right to appeal on that issue now exists at all for federal prisoners. In addition, the only benefit to this state prisoner of reducing the minimum term—allowing him to apply for parole—would probably not be realized much earlier, if at all, even if he succeeds on the issue before us.[5]

But putting all of those considerations aside, there is an even more fundamental reason why we should decline in this case to consider extending the rule of *Smith.* Appellant concedes, as we believe he must, that even if we were to extend the rule of *Smith,* the district court would still be required to hold a hearing on the factual question whether appellant in 1952 had actual knowledge of his right to appeal in *forma pauperis* from some source other than the court. Nevertheless, appellant has failed to come forward with information sufficient to justify our requiring such a hearing. *Cf.* United States v. Welton,

2. Prelim. Draft of Proposed Amendments to Fed.R.Crim.P. at 32.

3. Appellant's brief at 16.

4. Roldan cites various New York cases to show that his sentence might be reduced, *e. g.,* People v. Palmer, 33 A.D.2d 647, 305 N.Y.S.2d 85 (4th Dep't 1969); People v. Nagle, 30 A.D.2d 654, 292 N.Y.S.2d 346 (1st Dep't 1968), aff'd, 26 N.Y.2d 707, 308 N.Y.S.2d 872, 257 N.E. 2d 51 (1970). In none was the defendant convicted three times of second degree murder. In addition, the record shows that the state trial judge carefully considered a plea for leniency in deciding to impose the 30 year minimum sentence—10 years above the statutory minimum. In the light of this record it is highly unlikely that a New York appellate court would find an abuse of sentencing discretion. See People v. Gittelson, 25 A.D. 2d 265, 268 N.Y.S.2d 779, 787 (1st Dep't), aff'd, 18 N.Y.2d 427, 276 N.Y.S. 2d 596, 223 N.E.2d 14 (1966).

5. Counsel for both sides agree that Roldan will become eligible for parole under his present sentence in just under one year from now. Assuming that this court decided in appellant's favor, the possibility that the state might apply for an *en banc* hearing and the possibilities of an application for a stay pending petition for a writ of certiorari and of the filing of such a petition are all obvious. Moreover, as appellant's brief concedes, even if he did persuade us to extend the rationale of *Smith,* there would still have to be a hearing in the district court on the issue of appellant's knowledge of his right to appeal. Finally, the end result of all these federal proceedings would at most be reinstatement of appellant's right to appeal in the state courts, a process which would itself consume substantial time. Thus, assuming arguendo that appellant is ultimately successful in reducing his minimum sentence from 30 years to 20, if all of these proceedings consumed more than a year, appellant would not have advanced the time when he would be eligible for parole.

439 F.2d 824, 826 (2d Cir. 1971); United States ex rel. Rosen v. Follette, 409 F.2d 1042, 1044–1045 (2d Cir. 1969) (*en banc*), cert. denied, 398 U.S. 930, 90 S. Ct. 1822, 26 L.Ed.2d 93 (1970).

In his habeas petition to the district court appellant did not even allege that he was unaware of his right to appeal.[6] This critical failure alone might justify a federal court in dismissing the petition on its face. But additional inadequacies exist. Appellant conspicuously failed to include an affidavit of Myron J. Greene, who acted as chief counsel in his defense and who is still actively practising law and is presumably available. In place of such an affidavit, appellant proffered a scanty affidavit of Max Feigin, who served as one of the four appointed counsel, in which Mr. Feigin stated:

> I do not recall giving defendant any advice on his right to appeal; it was not the practice to so advise in the case of a plea. I did not advise defendant that an appeal would cost him $2500 and be fruitless.

To the extent this statement sheds any light at all on relevant factual issues, at best it cuts two ways. The statement lends a modicum of support for the proposition that Roldan did not learn of his right to appeal from his attorneys, but at the same time it undercuts the one concrete allegation in Roldan's petition, namely, that he was told an appeal would cost $2,500 and be fruitless. In addition, we find certain record facts persuasive on the issue of appellant's knowledge: first, the 15 year delay in commencing these proceedings; second, the emergence and sudden disappearance of the allegation that there was a broken promise of a 20 year sentence; third, appellant's consistent failure to identify which of his attorneys allegedly misinformed him about the cost of an appeal.

In sum, in the circumstances of this case we do not believe that appellant has demonstrated a basis for ordering an evidentiary hearing on his federal claim, and we simply cannot say the district court erred in denying the writ without holding one. Accordingly, we will not consider the grave issue whether to extend the rationale of *Smith* to convictions based on guilty pleas.

Judgment affirmed.

---

6. The habeas petition also did not allege that the sentence was excessive.