**UNITED STATES of America ex rel. Mark FRASIER, Petitioner-Appellant,**

**v.**

**R. J. HENDERSON, Superintendent of Auburn Correctional Facility, Respondent-Appellee.**

**No. 796, Docket 72-1110.**

United States Court of Appeals, Second Circuit.

Argued May 24, 1972.

Decided July 17, 1972.

Richard G. Ashworth, New York City, for petitioner-appellant.

Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y.; Samuel A. Hirshowitz, First Asst. Atty. Gen.; Stanley L. Kantor, Deputy Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LEVENTHAL,* FEINBERG and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Mark Frasier, presently incarcerated in Auburn Correctional Facility, New York, appeals from the dismissal of his petition for a writ of habeas corpus by Judge Charles L. Brieant, Jr., of the United States District Court for the Southern District of New York. In July 1967, appellant was tried in the Supreme Court, New York County, before Justice Francis T. Murphy, Jr., and a jury; appellant was convicted on four counts of robbery in the first degree, one count of second degree assault, and one count of possession of a loaded firearm. As a second felony offender, appellant was sentenced to a lengthy term of imprisonment.[1] His conviction and

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. He received concurrent terms of 15 to 16 years on the robbery counts, 2½ to 10 years on the assault count, and 3½ to 10 years on the firearms count.

sentence were affirmed without opinion on April 22, 1971, by the Appellate Division, 36 A.D.2d 904, 320 N.Y.S.2d 496. On the same day, the Appellate Division also affirmed without opinion the denial by Justice Murphy of appellant's coram nobis petition for re-sentence, 36 A.D.2d 906, 320 N.Y.S.2d 497. The Court of Appeals denied leave to appeal from both decisions on June 8, 1971.

On the present appeal, appellant presses three constitutional claims: that certain evidence was improperly seized and introduced at his trial; that the pretrial identification procedures were unnecessarily suggestive and tainted the in-court identifications of appellant by three victims; and that the state had failed to inform appellant of his right to appeal in forma pauperis from the prior felony conviction that was used as a predicate for his present sentence as a second felony offender. We affirm the dismissal of the first two of these claims, but as to the third we remand to the district court for further proceedings.

The indictment in this case arose out of an armed robbery in the "Convent Social Club" located in a basement on Convent Avenue in Harlem. The robbery took place at about 3:00 a. m. on Saturday, November 19, 1966. Two men gained entry into the club, at gun point herded about a dozen men into the back room, stole their wallets, watches and money, and then fled carrying the loot in an A & P shopping bag. During the five minutes the robbery lasted, one shot was fired. Several blocks away, two New York police officers in a patrol car, who knew nothing of the robbery, heard shouts and saw two men running through St. Nicholas Park. One officer, Patrolman Joseph Keane, jumped from the car, shouted to the man with a shopping bag and then chased him on foot when the man—after stopping momentarily—began to run.[2] The chase was short—down 129 Street for about half a block, then through a deserted "areaway" to 130 Street. During the chase, Patrolman Keane lost sight of the man for only a few seconds. When the patrolman turned the corner at 130 Street, he saw the man he had chased—appellant Frasier—sitting on the top step of a stoop to a small apartment building, about five yards away. Appellant was leaning backwards, pushing the shopping bag behind the vestibule doors. He was out of breath and perspiring. The patrolman, with his gun drawn, ordered appellant to "Stand up." Appellant responded: "What are you chasing me for?" At that point, Officer Keane's partner drove up, and, while the partner "covered" appellant, Officer Keane searched the shopping bag, which was still "partially sticking out" of the vestibule doors, and then "patted down" appellant. The bag contained a revolver with one shell spent as well as the wallets, watches and some of the money later identified as having been stolen from those present at the social club. Appellant was then brought to the station house where a diagram of the club's interior was found in one of his pockets.

A. The Search of the Shopping Bag

The district court held that the officer's search of the shopping bag was justifiable as being incident to an arrest without a warrant for which "there was probable cause." We believe that the district court was correct. It is true, as appellant asserts, that the patrolmen did not know positively that any crime had been committed or precisely what type of crime may have been committed. But the Constitution requires neither such certainty nor such specificity. What is required is that

> at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

2. The second man was neither chased not caught.

Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); see ALI, Model Code of Pre-Arraignment Procedure § 120.1(2) and (3), at 15–16, 129–141 (P.O.D. No. 1, April 10, 1972).

In the present case, the patrolmen were not confronted with a pair of typical joggers or other innocuous activity. See Sibron v. New York, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). It was late at night, the patrolmen had just heard shouts or yelling and then saw two men running out of a deserted park away from the yelling. Improbably, one of the men was carrying a shopping bag. When an officer jumped from the patrol car and shouted "Stop! Police!", one of the men—appellant—"turned and looked in [his] direction" but fled. Then, as already indicated, after Officer Keane had chased appellant to 130 Street, the officer saw him pushing the shopping bag behind the vestibule doors. This attempt to hide the bag, coupled with appellant's flight from the police and the other circumstances already enumerated, affords a basis for significantly more than a mere suspicion that appellant had committed a serious "offense." See Ker v. California, 374 U.S. 23, 34–37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Wabnik, 444 F.2d 203 (2d Cir.), cert. denied, 404 U.S. 851, 92 S.Ct. 88, 30 L.Ed.2d 91 (1971). We recognize that even though Officer Keane had reasonable cause to believe that a serious crime had been committed, he could not at the crucial moment determine precisely what crime that was—whether, for example, it was robbery, armed robbery, or burglary. But common sense and authority suggest that this inability should not invalidate an otherwise proper arrest. See Bell v. United States, 108 U.S.App.D.C. 169, 280 F.2d 717 (1960); ALI Model Code of Pre-Arraignment Procedure, supra, at 136. The arrest was thus constitutionally permissible.[3] Since this arrest and the search incident to it took place prior to the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), that decision is inapplicable here. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Under the constitutional standard that does control, see, e. g., Stoner v. California, 376 U.S. 483, 486–487 & n. 4, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), the search of the shopping bag within appellant's reach was clearly permissible.[4]

B. The In-Court Identifications

It should first be noted that even if the in-court identifications of appellant by three of the robbery victims are put entirely to one side, the remaining evidence against him was overwhelming. Appellant was, after all, caught out of breath and perspiring with the stolen wallets, watches and money minutes after the crime.[5] We are tempted to hold that any improprieties leading up to the in-court identifications could be treated as harmless error, particularly with respect to the conviction on the robbery counts. Cf. United States v. Olsen, 453 F.2d 612, 616 n. 4 (2d Cir. 1972); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1250–1252 (1968) (en banc) (opinion of Leventhal, J.), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). Nonetheless, the identifications appear to have been essential to at least the assault conviction, and, in any event, may have influenced

3. When the patrolmen drew their guns on appellant and ordered him to "Stand up," they "assert[ed] custody" over his person and arrested him at that point, see United States v. Grandi, 424 F.2d 399, 401 (2d Cir. 1970) despite the fact that appellant was only later technically placed under arrest.

4. In view of our disposition of this issue, we need not consider appellee's alternative argument that there was a deliberate by-pass of the fourth amendment point in the trial court because appellant followed the trial strategy of denying participation in the crime and ownership of the incriminating shopping bag.

5. The trial lasted over five days, but the jury returned its verdict in about two hours.

the jury's deliberations. We will therefore discuss the merits of appellant's claims under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which both sides agree governs here.[6] As we have said before, the inquiry required under the due process clause is "two-pronged"; were the identification procedures "unnecessarily" suggestive, *Stovall,* supra, 388 U.S. at 302, 87 S.Ct. 1967, and, if so, did they "give rise to a very substantial likelihood of irreparable misidentification"? Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). See United States ex rel. Springle v. Follette, 435 F.2d 1380, 1382 (2d Cir. 1970), cert. denied, Springle v. Zelker, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed. 2d 331 (1971); United States ex rel. Phipps v. Follette, 428 F.2d 912, 914–915 (2d Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970).

On direct examination in the present case, three victims identified appellant as being the man who, brandishing a revolver, committed the robbery (with the help of an accomplice) at the social club during the early morning hours of November 19, 1966.[7] On cross-examination, however, each of the three indicated that he had made a previous identification under procedures that appellant claims were constitutionally defective. The first witness, Kirk Brown, identified appellant in a one-man show-up at the stationhouse about one hour after the crime. Sam Hamilton, the second witness, identified appellant when shown a single photograph several weeks before the trial. Leavy Durant picked appellant's photograph out of "several other pictures . . . of different people" several weeks before the trial. Durant believed, however, that appellant's name might have been on the picture and also testified that Kirk Brown "could have" told him that he had identified someone named Frasier.

Upon a full examination of the record, we conclude, as did the district court, that these procedures did not result in a denial of due process under *Stovall.*

■ While one-man show-ups present obvious dangers, we have held that if conducted shortly after the crime they are not necessarily improper. United States ex rel. Springle v. Follette, supra (show-up one-half hour after the crime). Here, the show-up was conducted about an hour after the crime.[8] Officer Keane merely told Kirk Brown, "I want you to look at this person in here"; Brown responded spontaneously, "That's the man who held me up." Moreover, Brown had a good look at appellant during the robbery. Brown was knocked down in a lighted hallway; appellant stood about "a foot and a half" away and ordered him to get up. Moments later, in the back room, Brown stood face-to-face with appellant when the latter ordered him to turn toward the wall; appellant was no more than two feet away at the time. Under these circumstances, we do not believe the show-up created a "substantial likelihood of irreparable misidentification." See United States ex rel. Cummings v. Zelker, 455 F.2d 714 (2d Cir. 1972); United States ex rel. Springle, supra, 435 F.2d at 1385 (Friendly, J., concurring).

■ Turning now to witness Hamilton, in United States ex rel. Rivera v. McKendrick, 448 F.2d 30, 33 (2d Cir.

6. The pre-trial identifications complained of took place before the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In addition, the show-up occurred prior to the indictment. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

7. A fourth victim, who had no direct verbal communications with either robber, was unable to make a positive in-court identification of appellant. No other victims were called to testify.

8. At the time appellant was wearing the clothes he had been caught in.

1971), cert. denied, 404 U.S. 1025, 92 S. Ct. 678, 30 L.Ed.2d 675 (1972), we noted that "use of a single photograph is by itself a highly suggestive technique." Hamilton, however, testified on re-direct examination that the Assistant District Attorney also showed him several pictures of different men prior to testifying before the grand jury.[9] More importantly, Hamilton had ample opportunity to observe appellant during the robbery. Hamilton was playing cards in the back room when he heard someone shout, "This is a stick-up." [10] When appellant entered the back room, Hamilton was "facing the door where he came in" and was thus able to get a good look at him. He and appellant then got into an argument over Hamilton's wallet, which Hamilton was reluctant to part with until appellant—at gun point—finally told him to "shut up." In view of the totality of these circumstances we do not believe that the suggestive one-photo identification created a substantial likelihood of irreparable misidentification. See Simmons v. United States, supra; United States ex rel. Beyer v. Mancusi, 436 F.2d 755 (2d Cir.), cert. denied, 403 U. S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 712 (1971).

The third witness, Leavy Durant, did testify that Kirk Brown "could have" mentioned appellant's name to him prior to his photographic identification and that the photograph he picked out may have had appellant's name on it. But Durant also stated "I really don't remember" if Brown mentioned appellant's name and that "I'm not sure" if the photograph was marked. On such a scanty record we would be hesitant to require exclusion of the in-court identification. Further, Durant, like the other two witnesses, had a good opportunity to view appellant during the robbery. Durant was coming out of the back room at the time the robbery began. When the shot was fired he was pushed behind a snack bar. Appellant, who was about eight feet away, ordered him "to get up from off the floor," and when he did, appellant further told him to get what he had put under the snack bar. Durant complied, picking up the money and wallet that he had attempted to hide. He put them on the table as appellant then ordered. During this entire exchange, Durant was facing appellant. We conclude that his subsequent in-court identification of appellant had not been irreparably tainted by any impropriety in the intervening photographic identification—if in fact any impropriety occurred at all.

A final word should be said here in response to an argument raised by appellant in his *pro se* "Supplementary Brief." [11] Appellant's alibi witnesses at trial (including his wife and a girl friend) testified that on the night of the robbery appellant did not have a beard of any kind. The prosecution witnesses testified that the robber they identified as being appellant did have a beard of some kind. In addition, a police photograph, dated November 19, 1966, indicates that appellant had a beard of some kind. Appellant claims that "the merits of this factual dispute have not been resolved in the State courts," and further suggests that the state committed "unconstitutional acts" by using an allegedly adulterated photograph.[12] On the present

9. It is unclear whether this occurred before or after the single-photo identification, although the minutes of Hamilton's grand jury testimony suggest that the single-photo identification actually took place in the grand jury room.

10. He testified "I might have had a straight flush," suggesting a moment that might have lingered long in his memory.

11. The issue was raised in the habeas petition and is also discussed in appellant's reply brief.

12. Appellant also suggests that the "mug-shots" used in the photographic identifications were tampered with or at least taken at a time other than that indicated.

record, neither claim has any substance whatsoever. The question of appellant's alleged beard was fully presented to the jury. Both the defense and prosecution stressed their versions of the evidence in summation to the jury. Similarly, the accuracy of the photograph as well as the veracity of the policemen were placed squarely before the jury. Its verdict resolved both questions against appellant, and there is nothing in the record to suggest that that resolution should be treated as anything but final.

C. The Predicate Conviction

In his coram nobis petition in the state courts for resentence, appellant claimed that he was never advised of his right to appeal in forma pauperis from the predicate 1963 conviction and that therefore he should have been sentenced on his 1967 conviction as only a first felony offender. The 1963 conviction was based on a plea of guilty to the charge of grand larceny in the second degree.

Whether a state criminal defendant who has pleaded guilty has a federal constitutional right to be advised of his right to appeal in the state courts is a serious and troubling issue. See United States ex rel. Caruth v. LaVallee, 464 F.2d 449 (2d Cir. 1972); United States ex rel. Roldan v. Follette, 450 F.2d 514 (2d Cir. 1971); cf. People v. Lynn, 28 N.Y.2d 196, 321 N.Y.S.2d 74, 269 N.E.2d 794 (1971). We do not believe, however, that the issue may be properly resolved on the present record. First, although the district judge noted this issue as having been raised in the petition, his opinion did not deal with it.[13] For this reason alone, a remand may be appropriate. Additionally, it is unclear whether appellant has properly met the exhaustion requirement of 28 U.S.C. § 2254(b). Appellee maintains that under New York law appellant was required to challenge his predicate conviction and seek a re-sentencing on that conviction in the court of original jurisdiction (Bronx County) rather than before Justice Murphy in New York County, and that appellant has not yet done so. See People v. Lynn, supra; People v. Montgomery, 24 N.Y.2d 130, 134, 299 N.Y.S.2d 156, 161, 247 N.E.2d 130, 133 (1969). If appellee's position is correct, this portion of appellant's habeas petition should be dismissed without prejudice. Even assuming exhaustion is found, the district court should hold a hearing to determine (1) if the state court in fact failed to advise appellant of his right to appeal in 1963 and (2) if appellant nonetheless knew of his right from some other source. See United States ex rel. Roldan, supra, 450 F.2d at 516. If appellant is found to have been ignorant of his right, and if appellee does not concede that appellant has an appealable issue under People v. Lynn, supra,[14] then —and only then—will both the district court and this court be in a position to grapple with the question raised by the present petition on the basis of a full and complete record.

Affirmed in part; remanded in part, for further proceedings consistent with this opinion.

13. We cannot treat the conclusory statement that appellant "was not otherwise denied due process of law in the State Court proceeding" as being sufficient.

14. See *United States ex rel. Caruth*, supra.