727 P.2d 1342

**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**Mickey Dean COPELAND,**
**Defendant-Appellant.**

No. 8998.

Court of Appeals of New Mexico.

Aug. 19, 1986.

Certiorari Denied Oct. 16, 1986.

Paul G. Bardacke, Atty. Gen., Alicia Mason, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Paul D. Campos, Archuleta, Sanchez & Co., P.A., Santa Fe, Martin A. Lopez, Albuquerque, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals from his convictions for homicide by vehicle and driving while intoxicated. NMSA 1978, §§ 66–8–101 and –102 (Cum.Supp.1986). We affirm. We address each of defendant's appellate issues below.

**FACTS**

Defendant's truck struck and killed State Police Officer Manuel Olivas on the night of February 1, 1985, at the Pecos River bridge between Santa Fe and Las Vegas. The incident occurred at about 8:30 p.m. while Olivas was walking along I–25 with a measuring wheel, investigating a traffic accident near the bridge. Olivas was hit about twenty feet from the Las Vegas end of the bridge. There were no eyewitnesses to the accident.

Officers Perkins and Martinez investigated the accident. They found vehicle body

parts on the road and scuff marks in the snow. Based on the evidence, Martinez concluded that the suspect vehicle would be damaged on the right front; the headlight would be round and broken, the grill would be damaged, the portion around the headlight would be square, and the vehicle would be a truck. This information was broadcast and received by Officer Meserve in Las Vegas. Martinez told Meserve to search local motel parking lots for vehicles with similar damage.

At the third motel, Meserve located such a truck at about 11:15 p.m. The motel manager told Meserve that the driver of the truck checked into the motel at around 9:00 that evening, or perhaps between nine and ten. Meserve, knowing that an officer had been killed, called for back-up.

When the back-up arrived, all the officers examined the truck. They noticed a piece of cloth on the bottom of it, which indicated that the vehicle could have struck a person. There was also a slight indentation across the hood. The officers banged on the door of the room into which the driver of the truck had checked in. There was no answer. The manager opened the door with a pass key. However, the door would not open because the chain was up. Through a crack in the door, the officers could see someone lying on the bed with his glasses on.

The officers were nervous. They knew an officer had been killed. They did not know whether the man in the room was injured or whether he was lying in wait. They suspected that the man in the room had hit Olivas and was drunk. According to Meserve, hit-and-runs are usually associated with driving while intoxicated. The officers did not want the evidence to dissipate. A search warrant would have taken two-and-one-half to three hours to procure. They decided to break the chain lock. They did not ask the motel manager questions which might have helped to confirm or deny their beliefs about the man in the room.

Once in the room, the officers questioned defendant. Defendant stated that he owned the pickup and had come from Albuquerque. Defendant was arrested, read his rights, and told to get dressed. Defendant had trouble getting dressed. Meserve said that defendant smelled of alcohol. There were two beer cans in the room. One was unopened and the other was half full.

Defendant was taken to the police station, where he was given breath alcohol tests. These were given at 11:45 p.m. They registered .19, .21, and .21. Defendant made a number of statements at the police station. He told officers that, after a quarrel with his wife, he had driven from Albuquerque to Las Vegas; that he thought he struck something on the road but did not know what it was; and that he had drunk some beer while driving. All defendant's statements, except the one about striking something, were suppressed.

Officer Meserve next swore out a search warrant to get a blood alcohol test and to search the car. In the affidavit, he related that Olivas had been killed, that the damage on the truck matched the damage the officer was looking for, that the times coincided, that defendant had two beer cans by the bed, and that defendant made the statements. The search warrant issued and the blood alcohol test, performed three hours after the breath tests, showed a content of .18.

Defendant first argues that the police did not have probable cause to break into his room; that all the police had were suspicions which could have been dispelled had the officers questioned the manager of the motel. Defendant asserts that the motel manager would have told the police that defendant acted normally when he checked in. Defendant's second issue is based on the fact that Meserve, at one point, stated that he thought defendant could have operated a vehicle safely. Thus, defendant contends that there was no probable cause to arrest defendant because there was no probable cause that he drove in such a way as to cause an accident. Defendant's third issue appears to raise three sub-issues: (1) because there was no probable cause, the

officers could not invoke the Implied Consent Act (Act), NMSA 1978, Sections 66–8–105 to –112 (Orig.Pamp. and Cum.Supp. 1986), at all; (2) the officers could not seek a blood alcohol test once defendant consented to a breath test; and (3) defendant's consent to take the breath test was involuntary. Similarly, there are three sub-issues in defendant's fourth issue: (4)(a) there was no probable cause; (b) because statements subsequently suppressed from evidence appeared in the affidavit for the search warrant, and the evidence discovered pursuant to it were fruits of the poisonous tree; and (c) there were misrepresentations in the affidavit, specifically the affirmation that there were two beer cans in the room when the facts were that one was unopened and one was only half consumed. We now turn to these contentions.

## I. PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES FOR THE ARREST

■ Defendant's motel room is treated as his dwelling for fourth amendment purposes. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). *See State v. Madrid,* 91 N.M. 375, 574 P.2d 594 (Ct.App.1978). In order to make a warrantless, nonconsensual entry into a person's home to make an arrest, the police must have probable cause to arrest and there must be exigent circumstances necessitating the immediate entry. *State v. Chavez,* 98 N.M. 61, 644 P.2d 1050 (Ct.App.1982).

■ Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed. *State v. Donaldson,* 100 N.M. 111, 666 P.2d 1258 (Ct.App.1983). Probable cause means more than a suspicion but less than a certainty; only a probability of criminal conduct need be shown. *Id.* The officers do not need to positively know that a crime was committed; nor do they need to specify the exact crime as long as it is a serious crime. *United*

*States ex rel. Frasier v. Henderson,* 464 F.2d 260 (2d Cir.1972).

■ In this case, the officers knew that a fellow officer had been killed by a hit-and-run driver in a truck with a certain type of headlight and that the headlight would be damaged. The officer was killed by someone driving toward Las Vegas at a time when the person may have been expected to stop at Las Vegas. The officers knew that hit-and-runs frequently involve alcohol. Thus, when the officers located defendant's truck and saw the recent damage to it, which was consistent with the damage they believed would be caused by the impact, and when they learned that defendant checked into the motel at a time consistent with the time at which the person who hit Olivas would have arrived in Las Vegas, there was probable cause to believe that defendant was the person who struck Olivas in the unlawful operation of a motor vehicle.

■ Questions of the exigency of the circumstances are fact questions for the trial court, whose decision will be upheld if supported by substantial evidence. *Chavez.* Exigent circumstances means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. *Id.* The issue is not what the circumstances eventually show; it is whether, on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary. *Id.*

■ In this case, the officers knew that the accident happened about two-and-one-half hours prior to their entry into the room and that it would take another two-and-one-half to three hours to get a warrant. In the meantime, the alcohol thought to be in defendant's system would be metabolizing. This is a means of destruction of evidence, no less than flushing drugs down the toilet. Under *Chavez,* based on the destruction of evidence rationale alone, the trial court was warranted in finding

exigent circumstances. *See also State v. Komoto*, 40 Wash.App. 200, 697 P.2d 1025 (1985).

When, to this rationale, the other facts of this case are added, the exigency becomes even more compelling. The other facts include the following. The officers were aware that an officer had been killed. This made them nervous. They did not know what type of person they were dealing with. When defendant did not answer the door, the officers thought that defendant was either too drunk to do so, that he was injured, or that he was lying in wait for them. This belief became even stronger when they saw, through the crack in the door, that defendant was lying on the bed with his glasses on. Although none of these possibilities was, in fact, the case, the officers' beliefs in them were reasonable and they were justified in acting on those beliefs. *Chavez. See United States v. Mireles*, 583 F.2d 1115 (10th Cir.1978).

■ With regard to defendant's second issue concerning some conflicting evidence of probable cause, we note that substantial evidence will support the trial court's determination. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.1983). The evidence recited constitutes substantial evidence of both probable cause and exigent circumstances. Therefore, the arrest of defendant was legal.

## II. IMPLIED CONSENT ACT

■ Defendant's third argument involves application of the Act. The Act provides that any person who operates a motor vehicle within New Mexico shall be deemed to have given consent, subject to the provisions of the Act, to chemical tests of his breath or blood, if arrested for any offense arising out of acts alleged to have been committed while the person was driving a vehicle under the influence of an intoxicating liquor or any drug. § 66–8–107(A). The Act takes effect upon arrest. *Id.* Defendant first maintains that because the arrest was illegal, the officers could not invoke the Act. Because the arrest was legal, this issue is without merit. Given

the foregoing, the police officers did have reasonable grounds to believe that defendant had been driving while under the influence of intoxicating liquor; and, therefore, they could administer a chemical test after defendant's arrest for vehicular homicide. § 66–8–107(B).

■ Defendant further contends that the police were without authority to seek a search warrant for a further blood test. Apparently, defendant refused a blood test after his breath tests. Section 66–8–111(A) provides for chemical tests upon a search warrant issued by a magistrate when an individual refuses to submit to a chemical test. Nowhere in the Act is there a provision which limits the number of permissible tests to one, or any other number. The purpose of the Act is to deter driving while intoxicated, and to aid in discovering and removing the intoxicated driver from the highway. *McKay v. Davis*, 99 N.M. 29, 653 P.2d 860 (1982). Because multiple testing is consistent with this purpose, and because the Act does not limit the number of tests, the extra blood test was not per se unauthorized. We have considered defendant's involuntary argument based on coercion and find it to be without merit. The record does not support defendant's claim of coercion.

## III. SEARCH WARRANT AFFIDAVIT

Defendant contends that evidence obtained in the execution of the warrant should have been suppressed because the affidavit contained statements that were suppressed from evidence as having been taken in violation of defendant's rights and because it contained material misrepresentations.

■ When a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, evidence seized pursuant to the warrant is admissible if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information. *United States v. Smith*, 730 F.2d

1052 (6th Cir.1984); *see Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *State v. Barry*, 94 N.M. 788, 617 P.2d 873 (Ct.App.1980). Our inquiry, therefore, is whether the affidavit established probable cause without the tainted statements. Because we hold that it does, we need not determine whether we could use defendant's statements notwithstanding the fifth amendment violation. *See United States v. Morales*, 788 F.2d 883 (2nd Cir.1986).

■ Defendant also contends that the affidavit contained misrepresentations. Because the rule also requires this court to ignore the misrepresentations and to substitute in its stead the true facts, *State v. Donaldson*, the affidavit will be reviewed both without the tainted statements and with the true facts concerning the cans of beer in the motel room set forth.

So reviewed, the affidavit contains the following information. Olivas was killed by a hit-and-run driver while investigating an accident on I–25. The affiant had seen Olivas alive at 8:00 p.m. The sheriff had investigated the accident and learned that Olivas was killed by a driver who left the scene. The affiant went to motels to look for vehicles with damage consistent with that which would be sustained by hitting a person on the road. A truck with a broken headlight and grill was found at a motel. The person driving the truck had checked into the motel at a time consistent with having struck Olivas after 8:00 p.m. The person driving the truck was in the motel room, lying in the bed with his glasses on. There was a half-consumed can of beer by the bed and another unopened can of beer there also. Defendant said he thought he had hit something but he did not know what it was.

■ This information was sufficient to establish probable cause to search the truck for traces of evidence indicating a more direct match to Olivas' body, for evidence of drinking, and to test defendant's blood for evidence of drinking.

## IV. ADMISSION OF TESTIMONY OF BACA

The trial court admitted evidence that two women, Baca and Clark, who were driving from Santa Fe to Las Vegas, saw a truck that looked like defendant's weaving on the road. Defendant contends that there was insufficient evidence that the truck belonged to him and that the trial court, therefore, abused its discretion in admitting the evidence.

■ Baca testified that she and Clark passed a weaving truck at Glorieta on their way to the bridge. While there are numerous problems with their subsequent testimony and the coordination of the time of death with the location of the weaving truck, Baca positively identified the picture of defendant's camper attachment as the camper she saw on the road. The evidence was relevant, *see State v. Young*, 103 N.M. 313, 706 P.2d 855 (Ct.App.1985), and any doubts concerning the connection of the evidence to issues in the case would go to weight of the evidence, and not to its admissibility. *State v. Belcher*, 83 N.M. 130, 489 P.2d 410 (Ct.App.1971). No abuse of discretion was displayed by the trial court in admitting the evidence. *State v. Simonson*, 100 N.M. 297, 669 P.2d 1092 (1983).

## V. SUFFICIENCY OF THE EVIDENCE AS TO INTOXICATION AND CAUSATION

Defendant contends there was no direct evidence that he was under the influence of intoxicating liquor at the time of the accident. On appeal, the issue is whether substantial evidence of either a direct or circumstantial nature exists to support the verdict. *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). All evidence must be viewed in a light most favorable to the verdict, and all inferences from the evidence that can be reasonably drawn will not be overturned on appeal. *Id.*

Defendant's blood alcohol content at 11:45 p.m. exceeded .22, according to the testimony of a toxicologist. Although the toxicologist could not say what the alcohol content was at the time of the accident,

other evidence could have reasonably led the jury to infer that defendant was under the influence at the time of the accident.

 If, by virtue of having consumed intoxicating liquor, defendant's ability to handle his vehicle with safety to himself and the public was lessened to the slightest degree, then he drove while under the influence. *State v. Dutchover*, 85 N.M. 72, 509 P.2d 264 (Ct.App.1973). There was evidence that the truck was swerving, as testified to by Baca and Clark. Second, the motel manager testified that he saw defendant bring a cooler from his truck to the motel room. When the police entered the room, there were two beers in the room, one still in the cooler and one on the nightstand. The officers found defendant lying on the bed with his glasses on. It was reasonable to infer that defendant did not go out drinking after he checked into the motel room, and that all he drank at the motel room was the part of the beer that was on the nightstand before he got into bed and fell asleep with his glasses on. Third, there was evidence that defendant said he hit something, maybe a big bird or a deer. Defendant was not aware that he had struck a person even though the evidence indicates that the person bounced up onto the hood and remained there for about sixty-five or seventy-five feet. Defendant was traveling at between thirty and forty-five miles per hour. The vehicle swerved to the left as the person fell off the hood. This evidence supports the finding that defendant was under the influence at the time of the accident. *See Dutchover.*

 Defendant further contends that there was no substantial evidence that his acts caused Olivas' death. Other witnesses testified that the officer could be seen walking along the road, and that his car could be seen with its lights. With the evidence of intoxication recited above, the jury could reasonably have inferred that defendant's intoxication was at least one cause of the officer's death. *State v. Maddox*, 99 N.M. 490, 660 P.2d 132 (Ct.App. 1983). The evidence was sufficient to support the conviction for homicide by vehicle.

## VI. PROSECUTOR MISCONDUCT AND CUMULATIVE ERROR

Defendant complains of six instances of alleged prosecutor misconduct: (A) the prosecutor mentioned, and then argued, the presumption of impairment when blood alcohol content is over .1, when the presumption did not apply to this case; (B) the prosecutor asked hypothetical questions of the toxicologist and the hypotheticals had no basis in fact in the evidence; (C) the prosecutor violated ethical rules by informing the press of defendant's suppressed statements; (D) the prosecutor argued that the crime was one of strict liability; (E) the prosecutor asked questions concerning *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), and then argued the subject of *Miranda* to the jury in closing; and (F) the prosecutor commented on defendant's failure to testify at trial by referring to the silence of the dead victim and these comments also served to inflame the passions of the jury. We address each of these claimed points of misconduct.

### A. THE PRESUMPTION

When the prosecutor first mentioned the presumption in opening statement, the court instructed the jury that there was no such presumption and that the jury would be instructed on the law at the end of the case. The jury was properly instructed that they could consider the test results together with the other evidence in the case in determining whether defendant was under the influence. *Compare* § 66–8–110(B)(3), *with* NMSA 1978, § 66–3–110 (Cum.Supp.1985). During closing argument, the prosecutor argued to the jury that a doctor had testified that a person with a blood alcohol content of .1 would be affected and that defendant was driving with a level of twice that amount. There was then no mention of any presumption.

 The prosecutor's comment during opening statement was cured by instruction. *See State v. Vialpando*, 93

N.M. 289, 599 P.2d 1086 (Ct.App.1979). The prosecutor's comment during closing argument was properly based on the evidence in the case. *See State v. Henderson,* 100 N.M. 519, 673 P.2d 144 (Ct.App.1983).

## B. HYPOTHETICAL QUESTIONS

■■■ There was evidence to support the hypothetical questions asked of the toxicologist relating to the blood alcohol content at the time of the accident. There was circumstantial evidence to support the fact that defendant did most of his drinking before the time of the accident. There was an absence of evidence concerning whether defendant had eaten. The hypothetical questions asked of the toxicologist were to explain to the jury the distinction between the effect of alcohol on someone who had eaten as opposed to someone who had not eaten. The toxicologist explained that food in the stomach would interfere with the rate of alcohol absorption into the blood. This was opinion testimony based on specialized knowledge that could assist the jury in understanding the evidence of blood alcohol content. NMSA 1978, Evid.R. 702 (Repl.Pamp.1983). No misconduct occurred in asking the questions.

## C. PUBLICITY

Defendant complains that the prosecutor committed an ethical violation by talking to the media about defendant's suppressed statements. The only factual basis for this issue is counsel's representations at the motion for new trial hearing. Counsel's representations are not evidence such as would afford defendant a factual basis for the relief requested. *State v. Jacobs,* 102 N.M. 801, 701 P.2d 400 (Ct.App.1985).

## D. STRICT LIABILITY

Defendant contends that the prosecutor misstated the law in regard to causation, suggesting that vehicular homicide is a strict liability crime. Defendant does not explain his contention, and no mention was made in closing about any strict liability concepts. A defendant has to adequately explain his argument. *State v. Casteneda,*

97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). This point will not be considered.

## E. & F. *MIRANDA* AND COMMENT ON SILENCE

Defendant's most serious allegations of error concern the prosecutor's references to *Miranda* rights and his extended commentary on the silence of the deceased. Defendant's arguments on this issue point in two directions. First, he contends that the commentary, taken together, was a comment on defendant's failure to testify. Second, he contends that the commentary on the silence of the victim was simply an appeal to the passions of the jury.

### 1. Comment On Silence

■■■ Defendant's first instance of comment on *Miranda* rights occurred at a pretrial hearing. Because that could not have prejudiced the jury, it is not reviewed. There was testimony at trial, however, concerning defendant being given his rights. It does not appear that defendant objected at this point. This testimony is important because it provides the factual basis for the prosecutor's argument to the jury.

The second instance of comment on *Miranda* rights was during closing argument. At this time, the prosecutor commented that defendant was given his *Miranda* rights and then made the voluntary, extemporaneous statement about how he hit something, maybe a big bird or a deer. Because the jury was instructed to determine if defendant's statement was voluntary before they considered the statement for any purpose, the argument was within the evidence and issues in the case. *See State v. Henderson.*

The prosecutor's rebuttal closing argument began and ended with an argument concerning the silence of Officer Olivas. The prosecutor stated that although Olivas was silenced in death and could not testify, the evidence produced at trial was, in effect, Olivas' way of speaking out to the jury to convict defendant. Defendant contends that the effect of this, in combination with the *Miranda*-related comments,

**36**

amounted to a comment on defendant's failure to testify. Defendant did not object to this argument until the end of the closing argument.

 Because the silence of Olivas was, at best, an indirect comment on defendant's failure to testify, a timely objection was required to preserve any error. *State v. Dominguez*, 91 N.M. 296, 573 P.2d 230 (Ct.App.1977). Objection at the end of the prosecutor's closing was not timely. *State v. Carmona*, 84 N.M. 119, 500 P.2d 204 (Ct.App.1972). Moreover, the jury was instructed not to draw any inference from defendant's failure to testify. Additionally, because the *Miranda* -related comments were made on a legitimate issue in the case, i.e., the voluntariness of one of defendant's statements, no error occurred.

### 2. Appealing To Passions

Defendant also contends that the rebuttal closing argument was not based on the evidence because there was no evidence of Olivas' intent and that the argument was solely for the purpose of prejudicing the jury by arousing their passions in stating that Olivas' soul would not be at peace until defendant was convicted.

Again, however, defendant did not object at the time of this argument. Indeed, defendant did not even state these grounds (that the argument appealed to the jury's passions) when he made his motion for mistrial after the argument. Under *Carmona* and NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 308 (Repl. Pamp.1983), raising the matter for the first time on appeal is too late. We do not review this claim.

With regard to the claim of cumulative error, there was no cumulative prosecutorial misconduct in closing argument. Unlike the situation in *State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct.App.1983), legitimate reasons can be found for the prosecutor's comments in this closing argument. Moreover, as the opinion has recited, defendant was not deprived of a fair trial because of alleged cumulative error in the other portions of the trial. *See State v. Shafer*, 102 N.M. 629, 698 P.2d 902 (Ct.App.1985).

Defendant's convictions, judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and GARCIA, JJ., concur.