No. 69,240

STATE OF KANSAS, *Appellee,* v. GUILLERMO
GALLEGOS, *Appellant.*

(874 P.2d 647)

Opinion filed
May 27, 1994.

*Terry R. Fuller,* of Kinsley, argued the cause and was on the brief for appellant.

*Michael Grear,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Guillermo Gallegos appeals his jury trial conviction of voluntary manslaughter (K.S.A. 21-3403).

The sole issue raised is whether the district court erred in refusing to suppress defendant's confession. The pertinent background facts may be summarized as follows. On August 28, 1990, the skeletonized remains of Jesus Orozco Castillo were found by a bridge in Kiowa County. The cause of death was a gunshot wound. On June 17, 1991, Gallegos was charged with the felony murder of Castillo, and a warrant for his arrest was issued. On September 24, 1991, Gallegos was stopped in Pocatello, Idaho, for a speeding violation. An NCIC check revealed the Kiowa

County fugitive warrant, and Gallegos was arrested thereon. In a telephone conversation between the Kiowa County Sheriff's Department and the Pocatello Police Department, the latter was requested to obtain a statement from Gallegos. During the interview, Gallegos confessed to having killed Castillo. The admissibility of this statement is the subject of this appeal.

Upon Gallegos' return to Kansas, the charge was amended to first-degree premeditated murder. Gallegos was convicted in a jury trial of the lesser included offense of voluntary manslaughter.

Gallegos contends the trial court erred in: (1) finding that his confession was given freely, voluntarily, and intelligently after having been advised of his *Miranda* rights and (2) refusing to suppress his confession. Specifically, Gallegos argues that he did not give an effective *Miranda* waiver as: (1) his request to know the charge against him was not honored and (2) language and cultural barriers existed which precluded an effective waiver under the totality of the circumstances herein.

We will first set the scene for the interrogation. Present were Pocatello Police Detective Ken Lynn and Pocatello Police Lieutenant Garry Pritchett. Lynn asked the questions, assisted by Pritchett, who served as interpreter. Gallegos is a native of Mexico whose grasp of the English language is limited. After establishing Gallegos' language problems, the interview was conducted in Spanish. Considerable time was spent in explaining to Gallegos his *Miranda* rights and in being sure he understood each right thereunder. During the process, Gallegos was told he was wanted by the "police" in Kiowa County, Kansas. He asked what the police wanted him for in Kansas—what the warrant was for. Without answering this inquiry, the explanation of the *Miranda* rights was completed. Gallegos then agreed to talk to the officers. The first question was an inquiry to Gallegos as to whether he knew why an arrest warrant had been issued for him.

Gallegos' response was a lengthy narrative about a cousin who was involved with a married woman and a problem Gallegos had over not showing up in court over a complaint about his having walked around in his own residence without pants. The Pocatello police ultimately tired of this narration and stated that was not

why Gallegos had been arrested. Gallegos was told a man had been killed in Kansas and that Gallegos had been named as the killer. Gallegos supplied the name of the deceased, admitted killing him, and stated he had killed him because of an incident that had occurred some 10 years earlier when both men had been residents of a small village in Mexico.

Defendant contends that because under the Sixth Amendment he had a right to be informed of the charge against him, he could not intelligently waive his Sixth Amendment rights without this information. The trial court relied upon *Patterson v. Illinois*, 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1988), and *State v. Hamons*, 248 Kan. 51, 805 P.2d 6 (1991).

In *State v. Hamons*, 248 Kan. 51, defendant had been advised of his *Miranda* rights approximately one minute into the interview. He also signed a waiver. He argued that his waiver was neither voluntary nor made with full knowledge of all relevant facts, to wit: that he had been charged with first-degree murder. 248 Kan. at 55. Of the two detectives interrogating the defendant, one learned of the murder charge near the end of the interview; the other detective learned of the charge after the interview. 248 Kan. at 55-56. The trial court found that the defendant's statement "was given freely, voluntarily, and intelligently after he had been advised of his constitutional rights." 248 Kan. at 56. We reasoned:

"The Fifth Amendment right against self-incrimination requires that suspects be accorded the assistance of counsel during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 469, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

"The Sixth Amendment right to counsel arises when judicial proceedings have been initiated against a suspect 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Kirby v. Illinois*, 406 U.S., 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972); see *State v. Norris*, 244 Kan. 326, 331-33, 768 P.2d 296 (1989). A defendant's statement elicited without the presence or aid of a lawyer after attachment of Sixth Amendment protections may not be used against the defendant at trial unless the State can show that the accused knowingly, voluntarily, and intelligently waived the right to counsel. See *Brewer v. Williams*, 430 U.S. 387, 404-05, 51 L. Ed. 2d 424, 97 S. Ct. 1232, *reh. denied* 431 U.S. 925 (1977).

"In *Patterson v. Illinois*, 487 U.S. 285, 299-300, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1988), the United States Supreme Court held: 'So long as the accused

is made aware of the "dangers and disadvantages of self-representation" during post-indictment questioning, by use of *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is "knowing and intelligent." '

"Because the defendant in *Patterson* was informed that he had been formally charged, the United States Supreme Court did not address the first impression question presented to this court in the case at bar: Whether an accused must be told that he or she has been formally charged before a post-complaint Sixth Amendment waiver will be valid. See *Patterson*, 487 U.S. at 295 n.8.

"Hamons relies on *United States v. Mohabir*, 624 F.2d 1140 (2d Cir. 1980), and *Carvey v. LeFevre*, 611 F.2d 19 (2d Cir. 1979), *cert. denied* 446 U.S. 921 (1980). In those cases, the Second Circuit Court of Appeals held that an accused must be informed of the indictment before a post-indictment Sixth Amendment right to counsel waiver would be valid. The court in *Mohabir* and *Carvey* reasoned that waiver of the Sixth Amendment right to counsel required a 'higher standard' than Fifth Amendment *Miranda* warnings. 624 F.2d at 1148; 611 F.2d at 22.

"The United States Supreme Court in *Patterson* expressly rejected the Second Circuit's rationale in *Mohabir*. 487 U.S. at 295 n.8.

"In *Riddick v. Edmiston*, 894 F.2d 586 (3d Cir. 1990), the Third Circuit Court of Appeals addressed a claim similar to the one Hamons advances in this appeal. The court in *Riddick* rejected the reasoning of *Mohabir* and *Carvey*, observing that the United States Supreme Court had concluded in *Patterson* that there is no analytical distinction between the validity of a Fifth Amendment waiver and a Sixth Amendment waiver. 894 F.2d at 587-88. In *Riddick*, defendant validly waived his Sixth Amendment right to counsel when he was given *Miranda* warnings without being told that he had already been indicted for murder. 894 F.2d at 588.

"In *Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986), the United States Supreme Court commented, '[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or to stand by his rights.' 475 U.S. at 422.

"In the case at bar, the detectives testified, and the trial court found, that they did not know Hamons had been charged until the end, or near the end, of the interview. There is no indication that the detectives intended to deceive Hamons.

"The *Miranda* warnings advised Hamons of his right to remain silent and of his right to counsel. Hamons was informed that any statement he made could be used against him and of the consequences of waiving his right to counsel. We hold that Hamons validly waived his Sixth Amendment right to counsel after he was given *Miranda* warnings but before he was told that he had already been charged with murder." 248 Kan. at 56-57.

Hamons knew the subject of the inquiry, the homicide of Julie Solaberry, but was not advised he had been charged with her

murder. He did not know he was an accused rather than a suspect. In *Hamons*, the interrogators did not know this fact either until towards the end of the interview. We found no indication of an intent to deceive Hamons.

While the facts in *Hamons* were somewhat different, the same analysis applies. There is no indication in the case before us that the officers did deceive or attempt to deceive Gallegos as to the charge against him. Before the waiver, Gallegos knew he was under arrest on a Kiowa County, Kansas, warrant. Before there was any questioning of Gallegos on the homicide, he was advised that he was under arrest for the killing of a man in Kiowa County. Gallegos' statement disclosed that he knew, prior to his arrest, that he was a suspect in the Castillo homicide as he had been so advised in a telephone call from a relative. In this telephone conversation, Gallegos was informed that a relative of the deceased had advised Kiowa County law enforcement that Gallegos was the killer. As in *Hamons*, Gallegos was adequately apprised of his *Miranda* rights and waived his right to counsel and to remain silent. Under the totality of the circumstances herein, we find no error or abuse of discretion in the trial court's determination that the failure of the officers to answer Gallegos' question about the charge against him did not invalidate his waiver.

Gallegos next contends that language and cultural barriers existed which precluded an effective waiver of his right to counsel and to remain silent.

In *State v. Lilley*, 231 Kan. 694, Syl. ¶ 6, 647 P.2d 1323 (1982), we held:

"When the trial court determines at a hearing that a defendant's extrajudicial statement was freely, voluntarily and intelligently given and admits the statement into evidence at trial, the appellate court will not reverse such determination if it is supported by substantial competent evidence."

As previously stated, Gallegos is a native of Mexico with limited understanding of the English language. He was interrogated in Spanish.

K.S.A. 75-4351 provides, in pertinent part:

"A qualified interpreter shall be appointed in the following cases for persons whose primary language is one other than English, or who are deaf or mute or both:

. . . .

(e) when such person is arrested for an alleged violation of a criminal law of the state or any city ordinance. Such appointment shall be made prior to any attempt to interrogate or take a statement from such persons."

K.S.A. 75-4353(a) provides that the interpreter so appointed shall not be "interested in the outcome of the proceeding." The interpreter used herein was a Pocatello police officer who was assisting the officer conducting the interrogation.

We have a videotape of the interview and a transcript thereof. There is no claim that any incorrect translation occurred. Defendant contends the Kansas statutes should be the applicable standard for the interrogation herein. We do not agree. The interrogation procedure utilized by the Idaho officers was not contrary to any Idaho law. The policy behind the exclusionary rule is to deter unlawful police activity. *State v. Grissom,* 251 Kan. 851, Syl ¶ 24, 840 P.2d 1142 (1992). No unlawful police activity is involved herein. To extend Kansas laws relative to interpreters to whatever jurisdiction a particular interview occurs in would be unreasonable. Police officers can hardly be expected to be familiar with the laws of all 50 states.

The interview herein was conducted in a low-key, noncoercive manner. Gallegos was adequately advised of his constitutional rights and elected to talk with the officers. A full pretrial hearing was had on the motion to suppress. There is substantial competent evidence supporting the trial court's determination that Gallegos' confession was freely, voluntarily, and intelligently given and the admission of the same into evidence. We find no error in such determination or the admission of the confession into evidence.

The judgment is affirmed.