1998-NMCA-166

967 P.2d 843

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Larry SNYDER, Defendant–Appellant.**

**No. 18,661.**

Court of Appeals of New Mexico.

Sept. 16, 1998.

Certiorari Denied, No. 25,407, Nov. 4, 1998.

Tom Udall, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ARMIJO, Judge.

{1} Defendant appeals his conviction for possession of marijuana with intent to distribute in violation of NMSA 1978, § 30–31–22(A)(1) (1990), on the grounds that the district court erred in denying his motion to suppress evidence seized as a result of a warrantless search of his automobile by agents of the United States Border Patrol at a fixed checkpoint near Orogrande, New Mexico. Defendant asserts that the district court's failure to exclude this evidence from his trial violated his rights under Article II, Section 10 of the New Mexico Constitution because the State failed to make a particularized showing of exigent circumstances as required under *State v. Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1. Based on the independent grounds provided by our state constitution, we determine that the exclusionary rule under Article II, Section 10 applies to the use of evidence in a New Mexico state court proceeding when that evidence resulted from a search conducted by federal border-patrol agents at a checkpoint in New Mexico. However, because we determine that the state constitutional requirement of exigent circumstances for a warrantless search of an automobile was met in this case, we affirm Defendant's conviction.

## I. BACKGROUND

{2} At approximately 7:30 p.m. on June 29, 1996, Defendant drove his pickup truck into the primary inspection area of the United States Border Patrol checkpoint on U.S. Highway 54 approximately 35 miles south of Alamogordo, New Mexico. At that time, Border Patrol Agent Joel Sims was working at the primary inspection area. While questioning Defendant about his citizenship, Agent Sims observed that Defendant's hands and arms trembled. In response to further questioning about his itinerary, Defendant stated that he was travelling from Phoenix, Arizona, to his home in Garden City, Kansas, and that he travelled a lot because he was a federal grain inspector. When asked why he was taking such an indirect route between these two locations, Defendant replied that he was paid by the mile. Agent Sims noticed that Defendant became nervous and trembled even more.

{3} After asking for and obtaining permission to inspect Defendant's vehicle with a border-patrol dog, Agent Sims directed Defendant to the secondary inspection area in order to allow the dog to detect any suspicious odors emanating from Defendant's truck. Border Patrol Agent Jesus Torres, who was also stationed at the checkpoint,

accompanied Defendant to the other side of the traffic lane while Agent Sims accompanied the border-patrol dog around Defendant's truck. The dog alerted at the rear of Defendant's truck and indicated in the direction of the spare tire mounted underneath it. In the process of removing the spare tire from beneath the truck, Agent Sims noticed that it was heavy and uninflated. He cut the tire open with a knife and found eleven bundles of marijuana inside. When the marijuana was discovered, Agent Torres took Defendant inside a trailer at the checkpoint and placed him under arrest. Agent Donald Humphrey and his partner, who worked for the Otero County Narcotics Enforcement Unit, were summoned to the checkpoint to take custody of Defendant, his truck, and the bundles of marijuana.

{4} Defendant was brought to trial in the Otero County District Court on one count of possession of marijuana with intent to distribute. When the State sought to introduce photographs of the bundles of marijuana at trial, Defendant's trial counsel moved to suppress the photographs on the grounds that the marijuana was the fruit of an unlawful search under *Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1. The State asserted that *Gomez* did not apply, but was given the opportunity to elicit testimony from the State's witnesses to show the presence of exigent circumstances justifying the warrantless search.

{5} The district court ruled that it would not apply *Gomez* retroactively, or, in the alternative, that the testimony elicited by the State was sufficient to make a particularized showing of exigent circumstances. The photographs of the marijuana were admitted into evidence and a jury found Defendant guilty of one count of possession of marijuana with intent to distribute. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

■ {6} Whether the exclusionary rule under Article II, Section 10 of the New Mexico Constitution applies to the use of evidence in a New Mexico state court proceeding when that evidence resulted from a search conducted by federal border-patrol agents is a threshold constitutional issue that is subject to de novo review. *See State v. Marquart,* 1997–NMCA–090, ¶ 7, 123 N.M. 809, 945 P.2d 1027 (citing *State v. Attaway,* 117 N.M. 141, 145, 870 P.2d 103, 107 (1994)). The district court's determination of exigent circumstances is also subject to de novo review. *See Gomez,* 1997–NMSC–006, ¶ 40, 122 N.M. 777, 932 P.2d 1. However, in reviewing the district court's denial of Defendant's motion to suppress, we view the district court's factual determinations in the light most favorable to the State, together with all reasonable inferences therefrom. *See State v. Aragon,* 1997–NMCA–087, ¶ 10, 123 N.M. 803, 945 P.2d 1021.

### B. *Preservation of Error*

{7} The requirements for preserving a state constitutional claim for appellate review depend on current New Mexico precedent construing the particular state constitutional provision at issue. *See Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1. The requirement of exigent circumstances for a warrantless search of an automobile became current New Mexico precedent before Defendant's trial on March 21, 1997. *See id.* ¶ 39, 122 N.M. 777, 932 P.2d 1 (decided January 7, 1997). Defendant's trial counsel preserved this issue for appellate review by asserting the current precedent in his motion to suppress at trial and showing the factual basis needed for the trial court to rule on the issue. *See id.* ¶ 22, 122 N.M. 777, 932 P.2d 1.

■ {8} Although the district court did not consider or rule upon the threshold issue of whether the state constitution applies to the use of evidence in state court when that evidence results from a search by federal border-patrol agents, on appeal the State asserts that this threshold issue provides an alternative basis for affirming the district court's ruling. Generally, we may affirm the district court's ruling on grounds not relied upon below unless the appellant did not have a fair opportunity to present admissible evidence in the district court concerning the facts on which those grounds depend. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994).

### C.  Application of Federal Law

{9}  Before we examine the protection afforded by our state constitution, we must determine whether the right being asserted by Defendant is protected under the federal constitution.  *See Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (discussing interstitial approach to state constitutional analysis).  In applying federal law, we follow the precedent established by the federal courts, particularly the United States Court of Appeals for the Tenth Circuit.  *See State v. Fierro*, 1996–NMCA–028, ¶ 10, 121 N.M. 398, 911 P.2d 1202 (Hartz, J., specially concurring).  Under current federal precedents, a warrantless search of a mobile vehicle requires probable cause and nothing more.  *See Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (per curiam); *United States v. Anderson*, 114 F.3d 1059, 1065–66 (10th Cir. 1997).  Further, the Tenth Circuit has consistently held that an alert by a dog that is properly trained and certified in the detection of illegal drugs is sufficient to establish probable cause for a warrantless search.  *See United States v. Kennedy*, 131 F.3d 1371, 1376–77 (10th Cir.1997).  In the present case, Defendant does not dispute the border-patrol dog's qualifications or the fact that the dog alerted while inspecting his truck.  Hence, a warrantless search was reasonable under the Fourth Amendment to the United States Constitution.

### D.  Application of New Mexico Law

#### 1.  Scope of the Exclusionary Rule

{10}  Because Defendant's right to be free from a warrantless search of his truck in the absence of exigent circumstances is not protected by the Fourth Amendment, we next examine whether this right is protected under Article II, Section 10 of the New Mexico Constitution.  *See Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1.  In the present case, the State asserts that the New Mexico Constitution does not apply to a search by federal border-patrol agents because "no state actor is involved."  We agree that state law generally does not govern the conduct of federal agents.  *See* U.S. Const. art. VI, cl. 2; N.M. Const. art. II, § 1; *cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("[J]ust as state law may not authorize federal agents to violate the Fourth Amendment, neither may state law undertake to limit the extent to which federal authority can be exercised.") (citations omitted); *State v. Mollica*, 114 N.J. 329, 554 A.2d 1315, 1327 (N.J. 1989) ("Stated simply, state constitutions do not control federal action.").  *But cf. State v. Knight*, 145 N.J. 233, 678 A.2d 642, 657 (N.J. 1996) (whether state constitutional protections apply may depend on facts concerning "'antecedent mutual planning, joint operations, cooperative investigations, and mutual assistance between federal and state officers'" (quoting *Mollica*, 554 A.2d at 1329)).  For this reason, the fact that a provision of the New Mexico Constitution affords broader protection against unreasonable searches and seizures than its federal counterpart generally "is irrelevant where the question arises in federal court in response to a federal charge."  *United States v. Rose*, 806 F.2d 931, 932 (9th Cir.1986) (per curiam).

{11}  In the present case, however, the question arises in a New Mexico state court in response to the State's prosecution of Defendant for violating one of New Mexico's criminal statutes.  We determine that the State's ability to use the evidence at issue in this case in the courts of the State of New Mexico is governed by the exclusionary rule under Article II, Section 10 of the New Mexico Constitution.  *See Moran v. State*, 644 N.E.2d 536, 538 (Ind.1994) (applying Indiana constitution to Indiana state judge's ruling on question of whether Indiana prosecutor should be permitted to convict upon evidence that was product of federal search warrant); *Stidham v. State*, 608 N.E.2d 699, 701 (Ind. 1993) (applying Indiana statute to question of admissibility of statement obtained in Illinois in prosecution taking place in Indiana state court); *People v. Griminger*, 71 N.Y.2d 635, 529 N.Y.S.2d 55, 524 N.E.2d 409, 412 (N.Y. 1988) (applying New York search and seizure law in trial for crimes defined by New York penal law); Jennifer Friesen, *State Constitutional Law* § 11–3(d)(3) (2d ed. 1996) ("A state judge has the power to control what

evidence is admitted in his or her court."); *cf. State v. Rodriguez*, 317 Or. 27, 854 P.2d 399, 404 (Or.1993) (en banc) (application of state constitutional provision in context of state criminal prosecution is not preempted by federal immigration laws).

{12} To determine whether the evidence seized by the federal border-patrol agents in this case must be excluded from Defendant's trial in a New Mexico state court, we first identify the principles to be served by New Mexico's exclusionary rule, and then we evaluate how these principles would be served by exclusion of this evidence. *See State v. Bridges*, 83 Hawai'i 187, 925 P.2d 357, 367–68 (Haw.1996). Our analysis of the purposes of the exclusionary rule under our state constitution and its federal counterpart is controlled by *State v. Gutierrez*, 116 N.M. 431, 863 P.2d 1052 (1993).

{13} The *Gutierrez* Court noted that "[t]he federal exclusionary rule first evolved as a rule of constitutional dimension, but has been steadily reinterpreted so that today the rule stands as a deterrent safeguard of only minimal constitutional significance." *Id.* at 436, 863 P.2d at 1057. Under current federal law, the scope and application of the exclusionary rule are governed by practical considerations concerning the rule's costs and benefits. *Id.* at 437, 863 P.2d at 1058. In particular, the federal "exclusionary rule 'is designed to deter police misconduct rather than to punish the errors of judges and magistrates.'" *Id* . at 438, 863 P.2d at 1059 (quoting *United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The federal rule's deterrent effect is measured by its power to " 'alter the behavior of individual law enforcement officers or the policies of their departments.'" *Id.* (quoting *Leon*, 468 U.S. at 918, 104 S.Ct. 3405). In situations where the application of the federal exclusionary rule would not yield such a deterrent effect on law enforcement policies or behavior, federal courts have recognized an exception to the rule. *See Leon*, 468 U .S. at 919–21, 104 S.Ct. 3405 (recognizing "good-faith exception" to federal exclusionary rule).

{14} Some state courts have concluded that the application of state exclusionary rules will have little or no deterrent effect on the conduct of federal agents for the simple reason that state constitutions do not control the actions of other sovereigns. *See People v. Fidler*, 72 Ill.App.3d 924, 29 Ill.Dec. 51, 391 N.E.2d 210, 211 (Ill.App.Ct.1979); *State v.. Gallegos*, 255 Kan. 382, 874 P.2d 647, 651 (Kan.1994); *Commonwealth v. Cryer*, 426 Mass. 562, 689 N.E.2d 808, 813 (Mass.1998); *Mollica*, 554 A.2d at 1327. *But cf. People v. LaFontaine*, 159 Misc.2d 751, 603 N.Y.S.2d 660, 667 (N.Y.Sup.Ct.1993) (concluding that officer of neighboring state would be deterred by application of exclusionary rule to evidence illegally acquired by him or her in forum state and sought to be introduced in forum state's courts). This lack of any deterrent effect on agents of another sovereign provides the main reason why these state courts have declined to apply exclusionary rules under their state constitutions to evidence seized by such agents. *See·Fidler*, 29 Ill.Dec. 51, 391 N.E.2d at 211; *Gallegos*, 874 P.2d at 651; *Cryer*, 689 N.E.2d at 813; *Mollica*, 554 A.2d at 1327.

{15} However, unlike the federal exclusionary rule and the laws of some other states, our approach to the exclusionary rule under the New Mexico Constitution "focuses not on deterrence or judicial integrity, nor do we propose a judicial remedy; instead, our focus is to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure." *Gutierrez*, 116 N.M. at 446, 863 P.2d at 1067; *see also Marquart*, 1997–NMCA–090, ¶ 17, 123 N.M. 809, 945 P.2d 1027. In particular, New Mexico's exclusionary rule is not based on the rationale that suppression of tainted evidence is warranted only if such suppression is likely to alter the behavior or policies of law enforcement officials. Rather, the exclusionary rule under the New Mexico Constitution "focuses on the constitutional rights of individuals." *Marquart*, 1997–NMCA–090, ¶ 17, 123 N.M. 809, 945 P.2d 1027.

{16} The New Mexico Supreme Court has stated unequivocally that, in order to effectuate such rights under our state constitution, we must deny the State the use of evidence in a criminal proceeding in state

court when that evidence results from an unreasonable search or seizure. *See Gutierrez*, 116 N.M. at 444–46, 863 P.2d at 1065–67; *Marquart*, 1997–NMCA–090, ¶ 31, 123 N.M. 809, 945 P.2d 1027 (Hartz, J., specially concurring). "Denying the government the fruits of unconstitutional conduct at trial best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent as if the government's officers had stayed within the law." *Gutierrez*, 116 N.M. at 446, 863 P.2d at 1067.

{17} Our Supreme Court's explanation of the purpose and significance of the exclusionary rule under the New Mexico Constitution accords with the view of the Oregon Supreme Court. *See Gutierrez*, 116 N.M. at 445, 863 P.2d at 1066 (quoting *State v. Davis*, 295 Or. 227, 666 P.2d 802, 806–07 (Or.1983) (en banc) ("*Davis I* ")). The exclusionary rule under the Oregon Constitution "focus[es] on protecting the individual's rights *vis-à-vis* the government, not on deterring or punishing the excessive conduct of any particular governmental actor, local or otherwise." *State v. Davis*, 313 Or. 246, 834 P.2d 1008, 1012 (Or.1992) ("*Davis II* "). "[E]vidence is suppressed for violations of the Oregon Constitution 'to preserve ... rights to the same extent as if the government's officers had stayed within the law.' " *Id.* (quoting *Davis I*, 666 P.2d at 802). Based on this rationale, the Oregon Supreme Court has concluded that the requirements of the Oregon Constitution apply whenever the Oregon government seeks to rely on evidence in an Oregon criminal prosecution regardless of "*where* that evidence was obtained (in-state or out-of-state) or *what* governmental entity (local, state, federal, or out-of-state) obtained it." *Davis II*, 834 P.2d at 1012; *see also Rodriguez*, 854 P.2d at 402–03 (applying Oregon exclusionary rule to evidence seized in state by federal agents).

{18} We need not decide in this case whether the exclusionary rule under the New Mexico Constitution has the same broad application that the Oregon Supreme Court articulated in *Davis II*. *Cf. Bridges*, 925 P.2d at 369 n. 15 (declining to decide issue of exclusionary rule's application to evidence seized in state by federal agents in case involving evidence that resulted from out-of-state search by state agents). However, in light of our Supreme Court's explicit reference to Oregon law in *Gutierrez*, 116 N.M. at 445, 863 P.2d at 1066, we find the Oregon court's reasoning persuasive with respect to the in-state search by federal border-patrol agents that is at issue in the present case. Thus, we conclude that the requirement of exigent circumstances under Article II, Section 10 of the New Mexico Constitution applies to the federal border-patrol agent's search of Defendant's truck at a checkpoint in New Mexico when the State seeks to introduce evidence resulting from that search in a New Mexico state court.

### 2. Particularized Showing of Exigent Circumstances

{19} In *Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1, the New Mexico Supreme Court determined that under Article II, Section 10 of the New Mexico Constitution, a warrantless search of an automobile requires both probable cause and a particularized showing of exigent circumstances. In general, exigent circumstances involve " 'an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.' " *Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1 (quoting *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986)); *see also State v. Arredondo*, 1997–NMCA–081, ¶ 26, 123 N.M. 628, 944 P.2d 276.

{20} The issue we review on appeal, however, is not whether Defendant was in fact preparing to escape, destroy evidence, endanger life, or damage property. *See State v. Chavez*, 98 N.M. 61, 63, 644 P.2d 1050, 1052 (Ct.App.1982). Rather, the question is whether, in this situation, "a prudent, cautious, and trained officer, based on facts known, could reasonably conclude swift action was necessary." *State v. Corneau*, 109 N.M. 81, 89, 781 P.2d 1159, 1167 (Ct.App. 1989). In reviewing this question, we consider " 'all the record surrounding [the] arrest[,] search and seizure.' " *State v. Leyba*, 1997–

NMCA–023, ¶ 10, 123 N.M. 159, 935 P.2d 1171 (quoting *State v. Martinez,* 94 N.M. 436, 439, 612 P.2d 228, 231 (1980)). "If reasonable people might differ about whether exigent circumstances existed, we defer to the officer's good judgment." *Gomez,* 1997–NMSC–006, ¶ 40, 122 N.M. 777, 932 P.2d 1.

{21} The State elicited testimony that when the border-patrol agents obtained probable cause for the search, it was 7:30 p.m. and Defendant's truck was stopped at a checkpoint that was at least 35 miles from the nearest court in which a search warrant could be obtained. Further, there were only two agents stationed at the checkpoint at the time. Although traffic was described as "kind of light," Agent Torres testified he "went outside and continued inspecting traffic" while Agent Sims went over to Defendant's truck. Agent Torres also was responsible for guarding Defendant while Agent Sims and his dog inspected the truck.

{22} Defendant contends that exigent circumstances were not present in this case because the border-patrol agents were in a position to lawfully secure Defendant's vehicle and his person while they sought a search warrant. In particular, Defendant points to the fact that the agents had sidearms, handcuffs, and a facility for detaining prisoners at the station. Thus, according to Defendant, while one of the agents went to Alamogordo to obtain a search warrant, the other agent could have handcuffed Defendant or placed him in the detention facility, guarded his vehicle, and continued with his other duties. In the alternative, Defendant asserts that the border-patrol agents could have summoned additional personnel to enable them to secure the presence of Defendant and his vehicle while a warrant was obtained.

{23} The problems with Defendant's contentions are twofold. First, we question whether handcuffing or otherwise physically restraining Defendant pending the issuance of a search warrant during the evening by a court that is 35 miles away from the checkpoint would be any less intrusive than conducting an immediate search of the spare tire beneath Defendant's truck. A prolonged investigatory detention at a border-patrol checkpoint may constitute "a significant intrusion." *State v. Hernandez,* 1997–NMCA–006, ¶ 24, 122 N.M. 809, 932 P.2d 499. Second, "'[a]s soon as the investigation requires awaiting the development of circumstances off the scene, the validity of the investigatory stop becomes suspect,'" and the stop may ripen into a de facto arrest. *Id.* ¶ 25, 122 N.M. 809, 932 P.2d 499 (quoting *State v. Werner,* 117 N.M. 315, 319, 871 P.2d 971, 975 (1994)).

{24} Under these circumstances, the two border-patrol agents at the checkpoint had an objectively reasonable basis for believing that the only alternatives to their warrantless search of the spare tire beneath Defendant's truck were to allow Defendant to leave the checkpoint with the evidence or to risk a more intrusive de facto arrest by prolonging Defendant's detention at the checkpoint for the length of time it would take to secure a warrant. In this situation, it was not unreasonable for the agents to believe that exigent circumstances justified an immediate warrantless search, and we defer to their good judgment. *See Gomez,* 1997–NMSC–006, ¶¶ 40, 42, 122 N.M. 777, 932 P.2d 1. Hence, we affirm the district court's ruling that the warrantless search of Defendant's truck did not violate the requirements of Article II, Section 10 of the New Mexico Constitution.

## III. CONCLUSION

{25} We affirm Defendant's conviction for possession of marijuana with intent to distribute because it was not unreasonable for the border-patrol agents to believe that exigent circumstances justified an immediate warrantless search of his truck.

{26} **IT IS SO ORDERED.**

PICKARD, J., concurs.

HARTZ, C.J., specially concurring.

HARTZ, Chief Judge, specially concurring.

{27} I concur in the result but not the reasoning of the majority opinion. Article II, Section 10 of the New Mexico Constitution does not apply to the conduct of the United States Border Patrol agents in this case. Only the Fourth Amendment to the United States Constitution and federal statutes gov-

ern the search and seizure. Because Defendant concedes that there was no violation of federal law, the marijuana was properly seized and should be admitted into evidence. In *State v. Gutierrez,* 116 N.M. 431, 446, 863 P.2d 1052, 1067 (1993), the New Mexico Supreme Court stated that suppression of evidence seized in violation of Article II, Section 10 "effectuates" the rights guaranteed by that provision. But when Article II, Section 10 does not apply to a search, suppression can accomplish nothing in that regard.

{28} Constitutions provide the framework to "constitute" a government. In this nation's experience, when a constitution has been formulated to establish a sovereign government, it has been standard practice to include a bill of rights, the purpose of which is to protect against abuse of power by that sovereign. Even though the provisions of such a bill of rights typically include no reference to the sovereign, it is understood that the provisions relate only to the sovereign that is the subject of the constitution. For example, in our federal Constitution the Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Read in isolation, the language could apply to searches and seizures by anyone. But read in context, it undoubtedly restricts only the federal government. As Chief Justice Marshall wrote in ruling that the Bill of Rights binds only the federal government: "[T]he limitations on power, if expressed in general terms, are naturally, and, we think, necessarily, applicable to the government created by the instrument. They are limitations of power granted in the instrument itself; not of distinct governments, framed by different persons and for different purposes." *Barron v. Mayor of Baltimore,* 32 U.S. 243, 247, 7 Pet. 243, 8 L.Ed. 672 (1833) (Just Compensation Clause of Fifth Amendment does not apply to states); *see Talton v. Mayes,* 163

U.S. 376, 382, 16 S.Ct. 986, 41 L.Ed. 196 (1896) (Bill of Rights does not bind tribal government). Professor Neuman states that "rights within a constitution usually run against the government structured by that constitution." Gerald L. Neuman, *Conflict of Constitutions? No Thanks: A Response to Professors Brilmayer and Kreimer,* 91 Mich. L.Rev. 939, 947 (1993) (hereinafter "Neuman").

{29} Article II, Section 10 of the New Mexico Constitution tracks the language of the Fourth Amendment. It reads:

The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall without describing the place to be searched, or the persons or things to be·seized, nor without a written showing of probable cause, supported by oath or affirmation.

Like the Fourth Amendment, it applies only to the sovereign governed by the constitution in which it appears—the State of New Mexico. Thus, "[t]his section prohibits the *state* from making unreasonable searches and seizures." Chuck Smith, *New Mexico State Constitution: A Reference Guide* 36 (1996) (emphasis added). Those acting independently of the authority of the State of New Mexico, be they officers of another sovereign or private citizens, are not subject to Article II, Section 10. *Cf. State v. Murillo,* 113 N.M. 186, 188–91, 824 P.2d 326, 328–31 (Ct. App.1991) (Fourth Amendment inapplicable to conduct of private persons not acting as· instruments or agents of the government).

{30} In particular, when federal officers are not acting as instruments or agents of the state, Article II, Section 10 does not govern their conduct. Moreover, application of state law to federal officers may be foreclosed by the Supremacy Clause, U.S. Const. art. VI, cl. 2. *See* Neuman, *supra,* at 947 n. 33 ("State constitutional rights that ran against the federal government would inherently raise federal preemption problems.") As the New Jersey Supreme Court wrote. "Stated simply, state constitutions do not control federal action." *State v. Mollica,* 114 N.J. 329, 554 A.2d 1315, 1327 (N.J.1989); *accord* Barry

Latzer, *The New Judicial Federalism and Criminal Justice: Two Problems and a Response*, 22 Rutgers L.J. 863, 883–84 (1991) (hereinafter "Latzer"); *see Commonwealth v. Cryer*, 426 Mass. 562, 689 N.E.2d 808, 813 (Mass.1998) (provision of Massachusetts Declaration of Rights does not apply to New Hampshire police); 1 Wayne R. LaFave, *Search and Seizure* § 1.5(c) at 154–55 (3d ed.1996) (discussing *Mollica* with approval) (hereinafter "La Fave"). Of course, when state officers are working with federal officers or officers of another state, the state constitution may apply. *See Mollica* at 1328–30.

{31} Despite the above, perhaps a state court would still be tempted to find that evidence is "tainted"—and therefore should be suppressed—when seized by a federal officer acting in compliance with federal law yet contrary to the rules that govern state officers. Such a decision would be misguided.

{32} First, the decision would not protect anyone's privacy interests because it is highly unlikely that federal officers would change their conduct to comply with state laws. The Border Patrol checkpoint in this case will surely be operated the same way regardless of whether we apply New Mexico standards to their searches in judging the admissibility of evidence. Also, I am not aware of any basis on which a court could grant an injunction to require federal officers to comply with the New Mexico Constitution.

{33} Second, the "remedial scheme" created by the decision would be bizarre. If federal officers comply with federal search-and-seizure law, neither they nor the United States could be sued for damages for violating New Mexico standards. After all, as explained above, Article II, Section 10 does not apply to federal officers. Thus, if no evidence of crime is found in a Border Patrol search, the subject of the search would have no remedy for any failure to comply with Article II, Section 10. Only those accused of crime would be afforded relief, through suppression of evidence. This would be a peculiar result, to say the least—a result that would certainly bemuse the Founding Fathers, who knew nothing of the exclusionary rule and viewed the Fourth Amendment as a protection of the common-law right to sue government officials for conducting unreasonable searches and seizures. *See* Akhil Reed Amar, *The Constitution and Criminal Procedure/First Principles* 20–22 (1997); Christopher Slobogin, *Criminal Procedure: Regulation of Police Investigation/Legal, Historical, Empirical and Comparative Materials* 533–34 (2d ed.1998).

{34} Third, and most important, exclusion of evidence seized in such circumstances would not vindicate any rights of the person subjected to the search and seizure. The search and seizure was perfectly lawful if it complied with federal law. To be sure, in *Gutierrez* our Supreme Court said that suppression of evidence is necessary to "effectuate" the rights guaranteed by Article II, Section 10. *Gutierrez*, 116 N.M. at 446–47, 863 P.2d at 1067–68. But when, as here, Article II, Section 10 does not apply, no right was violated and no right would need "effectuating."

{35} I think that the New Jersey Supreme Court got it right in *Mollica*. It wrote:

We endorse the principle that federal officers acting lawfully and in conformity to federal authority are unconstrained by the State Constitution, and may turn over to state law enforcement officers incriminating evidence, the seizure of which would have violated state constitutional standards.

*Id.* at 1328. In reaching that result, the court explained:

[T]he application of the state constitution to the officers of another jurisdiction would disserve the principles of federalism and comity, without properly advancing legitimate state interests.... [I]t does not offend the constitutional principles of a forum jurisdiction to allow the transfer of criminal evidence from the officers of another jurisdiction to those of the forum when the evidence has been obtained lawfully by the former without any assistance by the latter.

In determining the validity of a search and seizure conducted by officers of anoth-

er jurisdiction, the critical assumption that obviates the application of the state constitution is that the state's constitutional goals will not thereby be compromised. . . .

. . . [N]o purpose of deterrence relating to the conduct of state officials is frustrated, because it is only the conduct of another jurisdiction's officials that is involved. Judicial integrity is not imperiled because there has been no misuse or perversion of judicial process. Further, no citizen's individual constitutional rights fail of vindication because no state official or person acting under color of state law has violated the State Constitution.

*Id.* at 1327–28 (citations omitted).

{36} The majority opinion cites a few opinions to support applying the search-and-seizure law of the forum state to officers of other jurisdictions. I do not find them persuasive. *Stidham v. State,* 608 N.E.2d 699 (Ind.1993), applied a state statute requiring exclusion of a juvenile's confession. *People v. Griminger,* 71 N.Y.2d 635, 529 N.Y.S.2d 55, 524 N.E.2d 409, 412 (N.Y.1988), is devoid of analysis to support its conclusion, and *Moran v. State,* 644 N.E.2d 536, 538 (Ind. 1994), does little better. *State v. Rodriguez,* 317 Or. 27, 854 P.2d 399, 403 (Or.1993) (en banc), just follows *State v. Davis,* 313 Or. 246, 834 P.2d 1008, 1011–13 (Or.1992), which asserts its conclusion without addressing the considerations I find compelling. Moreover, in *Moran, Rodriguez,* and *Davis,* the discussion was dictum because the evidence was not suppressed; and in each case the search and seizure involved officers of the forum state, so that applying forum law may well have been appropriate.

{37} The better-reasoned opinions and commentary support the admission of evidence obtained by officers of another jurisdiction, particularly federal officers, who act in conformity with the laws of their own jurisdiction. *See, e.g., Mollica; Cryer;* La-Fave, *supra,* at § 1.5(c); Latzer, *supra;* John Bernard Corr, *Criminal Procedure and the Conflict of Laws,* 73 Geo.L.J. 1217, 1233–34 (1985); *cf. State v. Bridges,* 83 Hawai'i 187, 925 P.2d 357, 364–72 (Haw.1996) (court will not suppress evidence obtained by Hawaii officers in California in compliance with California law, even if search would have been unlawful in Hawaii). We would be wise to follow that approach.