2003-NMCA-079

70 P.3d 1277

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Dorothy Jean GALLEGOS, Defendant–Appellant.**

No. 22,888.

Court of Appeals of New Mexico.

April 29, 2003.

Certiorari Granted, No. 28,068, June 6, 2003.

**840**

Patricia A. Madrid, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Theresa M. Duncan, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Defendant appeals the denial of her motion to suppress evidence obtained pursuant to the warrantless search of her automobile by border patrol agents. She contends that the State failed to prove the existence of exigent circumstances that would justify a warrantless search. We agree that the State failed to prove exigent circumstances and reverse the denial of Defendant's motion to suppress.

### BACKGROUND

{2} On January 16, 2001, Agent Daniel Padilla was the primary agent working at the United States Border Patrol checkpoint near Orogrande, New Mexico. This is a fixed checkpoint on Highway 54 about thirty miles south of Alamogordo, New Mexico used to stop and inspect vehicles for illegal aliens or contraband. Defendant, driving a white four-door sedan, entered the checkpoint about 8 p.m. As she entered the checkpoint, the vehicle continued to slowly roll through and did not come to a complete stop. Agent Padilla put up his hand to stop her. When asked about citizenship, Defendant responded that everyone in the vehicle was a United States citizen and began driving away. Agent Padilla testified that he stopped her again and began asking questions about her travel plans. She stated that she was headed to Liberal, Kansas. When asked about ownership of the vehicle, Defendant stated that all of her documentation had been stolen in El Paso, Texas.

{3} Agent Padilla testified that during his questioning, Defendant was acting nervous. She was unable to sit still and was unable to make eye contact with him. He testified that she was looking in all directions, and when he asked her questions, she failed to look at him when responding. He stated that Defendant's nervousness made him suspect that there was contraband in the vehicle.

{4} After asking about her registration, Agent Padilla asked if he could look in the trunk of the vehicle. Defendant agreed and got out of the vehicle to open the trunk. Agent Padilla testified that Defendant's hands were shaking so much that she had to steady her right hand with her left in order to open the trunk. When the trunk was opened, Agent Padilla observed some small grocery bags containing food and other bags containing clothing. Defendant volunteered that she had picked up her friend in El Paso and was driving her to Liberal, Kansas.

{5} At this point, Agent Padilla asked for permission to inspect the vehicle with a canine. Defendant gave permission and the vehicle was moved to the secondary area. While Agent Scroggs, who is the canine's handler, inspected the vehicle with the canine, Agent Padilla waited with the occupants of the vehicle in the secondary waiting area. Agent Scroggs informed Agent Padilla that the canine alerted to the rear bumper of the vehicle. At that point, Agent Padilla inspected the rear bumper area and noticed that there was foam insulation that was not factory installed applied to the undercarriage on the inside of the bumper area. He poked his finger in the insulation and removed a small portion of the foam. Underneath, he saw what appeared to be a bundle of marijuana.

{6} Agent Padilla then took Defendant inside the checkpoint building, arrested her, and advised her of her rights. Agent

Scroggs went out and started chiseling the foam off the rear of the bumper in order to pull the bundles out. Agent Scroggs also located bundles under the rear seat and behind the rear seat backrest. In total, forty-eight bundles were found and the contents of the bundles tested positive for marijuana.

{7} Defendant was charged with possession of marijuana with intent to distribute. She moved to suppress the marijuana arguing that it was obtained pursuant to a warrantless search. The motion to suppress was denied. In denying the motion to suppress, the trial court found that Defendant's conduct gave rise to reasonable suspicion entitling Agent Padilla to make further inquiries. It further found that once Defendant was unable to produce license and registration documentation, Agent Padilla could further detain her. The trial court found that Defendant's consent to search the trunk and consent to conduct a canine sniff were freely and voluntarily given. Finally, the trial court found that the canine's alert created probable cause and that exigent circumstances existed to justify a warrantless search.

{8} After Defendant's motion to suppress was denied, she pleaded no contest to the charges, reserving the right to appeal the suppression issue. This appeal followed sentencing.

## DISCUSSION

### Standard of Review

{9} In reviewing a trial court's denial of a motion to suppress, this Court examines the record to determine whether the law was correctly applied to the facts as found by the trial court. *State v. Attaway*, 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994). "[W]e view the district court's factual determinations in the light most favorable to the State, together with all reasonable inferences therefrom." *State v. Snyder*, 1998–NMCA–166, ¶ 6, 126 N.M. 168, 967 P.2d 843. Whether those facts establish exigent circumstances is a question of law that this Court reviews de novo. *State v. Gomez*, 1997–NMSC–006, ¶ 40, 122 N.M. 777, 932 P.2d 1.

### Particularized Showing of Exigent Circumstances

{10} We recognize that under federal law, border patrol agents do not need to obtain a warrant to search a lawfully stopped vehicle if there is probable cause to believe that the vehicle contained evidence of a crime. *See California v. Acevedo*, 500 U.S. 565, 569, 575–76, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). However, under the New Mexico Constitution, a warrantless search of an automobile requires both probable cause and exigent circumstances. N.M. Const. art. II, § 10; *Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1. Evidence obtained pursuant to a warrantless search of an automobile that does not meet the requirement of *Gomez*, can and will be excluded from use in state proceedings. *See State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 20, 130 N.M. 386, 25 P.3d 225 (holding that "our state constitution applies to evidence seized by federal agents when the State seeks to admit that evidence in state court").

{11} An "exigent circumstance" is described as " 'an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.' " *Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1 (quoting *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986)). The exigency of circumstances depends on practical considerations. *State v. Chavez*, 98 N.M. 61, 63, 644 P.2d 1050, 1052 (Ct.App.1982). "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." *Id.* (internal quotation marks and citations omitted). The inquiry is an objective one into whether a reasonable, well-trained officer would have good reason to believe that swift action was necessary under the particular circumstances surrounding the search. *Gomez*, 1997–NMSC–006, ¶¶ 40, 42, 122 N.M. 777, 932 P.2d 1.

{12} It is the State's burden to prove the existence of circumstances justifying a warrantless search. *State v. Diaz*, 1996–NMCA–104, ¶ 8, 122 N.M. 384, 925 P.2d

4. Evidence was presented that the checkpoint is thirty miles south of Alamogordo, where the nearest magistrate is located. Evidence was also presented that the magistrate was available at the time of the stop and that there is a telephone at the checkpoint and a fax machine at the main border patrol office in Alamogordo. There were three border patrol agents on duty at the checkpoint at the time of the stop. There was no testimony from the border patrol agents regarding why there was an immediate need for a search without a warrant. Nor was there any testimony regarding the amount of time necessary to secure a warrant. Citing *Snyder*, 1998–NMCA–166, 126 N.M. 168, 967 P.2d 843, the State argued that the distance between the checkpoint and Alamogordo, coupled with the time of night and the fact that there were only three border patrol agents on duty at the time created exigent circumstances that justified a warrantless search of Defendant's vehicle. The trial court made no independent findings but determined that this case was nearly identical to *Snyder* and, thus, required the same result. We disagree.

## Application of *Snyder*

{13} In *Snyder*, the defendant was stopped at the same checkpoint at about the same time. As in this case, permission was given to inspect the defendant's vehicle with the border patrol canine. The canine alerted to the rear of the defendant's truck, in the direction of the spare tire mounted underneath. The agent removed the spare tire and noticed that it was heavy and uninflated. He cut the tire with a knife and found marijuana inside. Thereafter, the defendant was arrested. There were two border patrol agents on duty at the time of the stop.

{14} This Court determined that exigent circumstances existed for a warrantless search of the vehicle. We pointed out that a prolonged detention at the checkpoint could constitute a significant intrusion and that the initial stop could ripen into a de facto arrest in the time it would take to obtain a warrant. *Id.* ¶ 23. The risk of a de facto arrest, in combination with the fact that there were only two border patrol agents on duty and

that one would have had to go to Alamogordo to get the warrant, leaving the other agent to control the defendant as well as operate the checkpoint, created a situation where it was reasonable for the border patrol agents to believe that a warrantless search was justified.

{15} The facts and circumstances in the present case are different. There were three border patrol agents on duty at the time of the stop. Thus if one agent needed to go to Alamogordo to get a warrant, there were still two remaining to operate the checkpoint and guard Defendant. Unlike *Snyder*, evidence was presented here that a magistrate was on duty. Moreover, there was evidence that the checkpoint has a telephone and the main border patrol office in Alamogordo has a fax machine, both of which could have been used to relay the information necessary to obtain a warrant. Here, the agents provided no testimony that another agent was not available in the Alamogordo office and that they otherwise could not have made use of technology to substantially shorten the length of time necessary to obtain a warrant. The State offered no evidence to show that the time necessary to obtain a warrant would be excessive, thus, raising the possibility of a de facto arrest. Consequently, we limit our holding in *Snyder* to the specific circumstance of that case.

{16} Defendant also argues that the arrest occurred before the search thereby eliminating the concern about a de facto arrest. While we need not address this argument, we observe that Defendant was arrested after Agent Padilla poked through the insulation and exposed the first bundle of marijuana. Consequently, the arrest occurred after the warrantless search. The fact that the agents continued the search ultimately discovering forty-eight bundles of marijuana does not change the timing of the arrest.

{17} Finally, we express our concern with the claim of exigency attached to a fixed border patrol checkpoint. We are loath to hold that fixed border patrol checkpoints located a distance from any magistrate create a per se exigency allowing a search of a vehicle and seizure of evidence therefrom without a warrant. To so hold would eviscer-

ate the requirement of a particularized showing of an emergency situation requiring swift action.

{18} We understand the reason for placing the checkpoint at a point on the road that does not allow drivers to evade it. However, we have never allowed the agents to create the exigent circumstances. *State v. Wagoner*, 1998–NMCA–124, ¶ 13, 126 N.M. 9, 966 P.2d 176, *rev'd on other grounds*, 2001–NMCA–014, 130 N.M. 274, 24 P.3d 306. Nor have we allowed the possible inconvenience to law enforcement officers to be the basis for a finding of exigent circumstances. *See State v. Corneau*, 109 N.M. 81, 89–90, 781 P.2d 1159, 1167–68 (Ct.App.1989); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 481, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (stating that the warrant requirement "is not an inconvenience to be somehow 'weighed' against the claims of police efficiency"). The claim that the checkpoint is thirty miles away from the magistrate and it takes too long to get a warrant is unpersuasive. "Advances in electronic and telecommunications technology, ... have eliminated many of the temporal and geographic hurdles which previously prolonged the time needed to obtain a warrant." Donald L. Beci, *Fidelity to the Warrant Clause: Using Magistrates, Incentives, and Telecommunications Technology to Reinvigorate Fourth Amendment Jurisprudence*, 73 Denv. U.L.Rev., 293, 319–20 (1996).

{19} With this in mind, we see no reason why procedures cannot be established to obtain search warrants within a reasonable length of time when agents at fixed border patrol checkpoints have probable cause to search. The procedures can include telephone, computer, facsimile, and digital technology, all of which are commonly available. These checkpoints are permanent, and while their primary purpose is to detect illegal immigration, the discovery of contraband is not unexpected. *Cardenas–Alvarez*, 2001–NMSC–017, ¶¶ 67–68, 130 N.M. 386, 25 P.3d 225. At the very least, the burden should be on the State to prove that such procedures cannot be put into place.

{20} Furthermore, if effective and reasonable procedures are established to obtain a search warrant when an agent has probable

cause, the detention of a defendant while the procedure is followed to obtain a warrant will not become a de facto arrest, rather the detention under these circumstances will be reasonable. When unexpected events prevent the set procedures from being followed thus delaying or preventing the warrant from being obtained, exigent circumstances could result. Consequently, an agent's explanation regarding the number of agents present, time, and distance, and concern that detention will turn into a de facto arrest, will fall on deaf ears as reasons for a warrantless search at a fixed border patrol checkpoint absent testimony on the procedure established to obtain needed warrants and why the procedure could not be followed and the warrant obtained within a reasonable time.

{21} In any event, we do not believe that the circumstances present in this case established exigent circumstances justifying a search without a warrant. We recognize that federal border patrol agents may search a vehicle upon a showing of probable cause alone. However, where they do so without a warrant or an exception to a warrant, the evidence will be excluded under the mandate of the New Mexico Constitution. *Id.* ¶¶ 17–19; *Gomez*, 1997–NMSC–006, ¶ 24, 122 N.M. 777, 932 P.2d 1.

### Additional Arguments by the State

{22} There is some suggestion by the State that Defendant consented to the search of the bumper of her vehicle. There are no facts to support that contention. Rather, it is clear that there was consent to search the trunk, which was done, and there was consent to inspect the vehicle with the canine, which was also done. Thereafter, there was no consent sought or given to pull the insulation out of the bumper and remove the bundles of marijuana. The scope of a search is limited by the actual consent given. *State v. Garcia*, 1999–NMCA–097, ¶ 9, 127 N.M. 695, 986 P.2d 491. Here, the consent to examine the trunk and to run a canine around the vehicle did not extend to removal of the foam insulation and the bundles of marijuana. The State's argument regarding consent is not supported by the record.

844

{23} The State also argues that Agent Padilla could poke his finger into the insulation and having done that, when he saw the contraband, he could seize it under the plain view doctrine. This argument was not made below and cannot be advanced here to support the seizure of the evidence. *See State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (holding that the trial court will not be affirmed on a fact-dependent ground not raised below when to do so would be unfair to the other party who lacked an opportunity to present evidence below). Moreover, even if the agent did see the contraband from an area where he had the right to be, he needed a warrant to seize it. *State v. Jones*, 2002–NMCA–019, ¶¶ 14–15, 131 N.M. 586, 40 P.3d 1030.

## CONCLUSION

{24} We hold that the facts and circumstances here did not establish exigent circumstances such that the border patrol agents were justified in foregoing a warrant to search Defendant's vehicle and seize contraband therefrom. We, therefore, reverse and remand to the trial court for entry of an order suppressing the evidence.

{25} **IT IS SO ORDERED.**

I CONCUR: MICHAEL D. BUSTAMANTE, Judge.

JONATHAN B. SUTIN, Judge (specially concurring).

SUTIN, Judge, specially concurring.

{26} I agree in the result. I would overrule *State v. Snyder*, 1998–NMCA–166, 126 N.M. 168, 967 P.2d 843, instead of rendering it only brain dead. I think the majority's fair warning in paragraphs 17–21 should be law rather than warning.

{27} While *Snyder* may have been properly analyzed under our usual approach requiring a particularized showing of exigent circumstances, *see Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1, I think it is time to deviate from that approach in border patrol fixed checkpoint cases. No reason exists in these cases to "defer to the [agent's] good judgment," *id.* ¶ 40, until such

time as a good faith attempt to follow established procedures fails and the agent is at a point at which he must choose between a warrantless search and allowing the vehicle to continue on. Thus, unless an exceptional circumstance otherwise exists, no objectively reasonable basis exists for believing exigent circumstances requiring an immediate warrantless search at a border patrol fixed checkpoint are present unless and until the procedures are established and followed. Until then, as in the present case, evidence obtained from a warrantless search should, generally, be barred.